MARC J. HELD*
PHILIP M. HINES*

*ALSO ADMITTED IN NEW JERSEY

JACK ANGELOU
EDWAR D S. MILLER\
URI NAZRYAN
ELIOT GONSHOREK



**HELD & HINES LLP**
ATTORNEYS AT LAW

October 27, 2023

***Via ECF***
Hon. Cheryl Pollak, Chief Magistrate Judge.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Mortley v. S & N Topaze Restaurant et als, Inc., et al.*
              22 Civ. 01003 (LDH) (CLP)

Honorable Chief Magistrate Judge:

      This office represents plaintiff Rajin Mortley in the above-captioned matter. For the reasons set forth herein, plaintiff, with the anticipated approval of Nneena Onua, Esq., counsel for Defendants, respectfully requests that the Court assess and approve the settlement agreement reached by the parties. The Court should approve the Settlement Agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter and was negotiated during a mediation between experienced counsel Jess Bunshaft Goldstein, a mediator on the EDNY Panel. A copy of the proposed Settlement Agreement is attached hereto.

*Background*

      As set forth in his Complaint, Plaintiff was employed by defendants as a server, cook, chef, and other roles. In or about 2015, Plaintiff was hired by defendants to work at their restaurant Plaintiff worked consistently for defendants until he left their employ by termination on or about June, 2022. The Plaintiff alleges defacto termination by virtue of Defendants' willful nonpayment of the mandated minimum wages and overtime wages. Plaintiff commenced this action on or about October 12, 2020, by filing a Complaint against Defendants alleging, *inter alia*, unpaid minimum wages and unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). In the Complaint, Plaintiff alleges that Defendants willfully failed to compensate him at the statutory minimum wage and also failed to compensate him for hours worked over 40 in the workweek. (Dkt. 1). Defendants filed their Answer on June 23, 2022. (Dkt.20). The Chief Magistrate Cheryl Pollak held a few conferences, during one of which the parties agreed to submit this matter to EDNY mediation.

      After two mediation sessions were held, that spanned many months apart, before Jess

370 LEXINGTON AVENUE, STE. 800
NEW YORK, NY 10017
TEL: 212.696.4LAW
FAX: 718.444.5768

www.HELDHINES.com

2004 RALPH AVENUE
BROOKLYN, NY 11234
TEL: 718.531.9700
718.444.5768

Bunshaft. After nearly four (4) hours of negotiations, exchanging timesheets and other records, the parties were able to agree on a settlement, the details of which are explained in the settlement agreement. The parties could not reach this complete the resolution of the settlement for a long period of time, by virtue of the health of one of the defendants and due to financing issues that the defendants faced.

*The Settlement Agreement*

In negotiating and agreeing to the settlement terms, the parties have considered the strengths and weaknesses of the claims and defenses, the current financial position of the parties, the burden and delays of protracted litigation, and the fact that engaging in protracted litigation could result in legal expenses to Defendants that would potentially impair their ability to satisfy any judgment that might be assessed against them after a full legal proceeding.

As the Court can see from the Settlement Agreement submitted herewith, the parties agreed to settle Plaintiff's claims against Defendants for a total of **Forty Two Thousand Dollars and Zero Cents ($42,500.00),** which is inclusive of legal fees and costs. Plaintiff valued his case at approximately $400,000.00. While the final settlement amount is less than Plaintiff's maximum possible recovery, we believe this to be a fair resolution of this matter, due to certain *bona fide* disputes about the value of Plaintiff's claims, the parties' current financial position, the risks attendant with continuing the litigation, and the COVID-19 pandemic. Defendants adamantly dispute that Plaintiff worked the hours claimed, and insist that he was properly paid for all hours worked at the required rate of pay per all applicable statutes and rules. Defendants further claim that they are in compliance with all NYLL notice requirements.

While the parties continue to express opposing views on the likely outcome of this matter, the parties understand that the complex factual issues in this matter would likely require a trial, and that each party would expend significant time and costs to prepare for trial. While the parties have agreed to a settlement, there remains significant disagreement between the parties over the number of hours worked by Plaintiff, and the amount and manner in which Plaintiff was compensated.

As set forth in the proposed Settlement Agreement, the parties have agreed to allocate the settlement payment as follows:

| | |
|---|---|
| Statutory damages: | 0 |
| Liquidated damages: | 0 |
| Unpaid wages: | $27,320.83 |
| Interest: | 0 |
| Attorneys' fees and costs: | $15,179.17 |
| Total settlement: | $42,500.00 |

By settling now, Plaintiff ensures that he will get much of what he could potentially recover, and he does so without having to wait through months of likely fruitless discovery and then the uncertainty of trial.

*FLSA Settlement Approval*

370 LEXINGTON AVENUE, STE. 800
NEW YORK, NY 10017
TEL: 212.696.4LAW
FAX: 718.444.5768

www.HELDHINES.com

2004 RALPH AVENUE
BROOKLYN, NY 11234
TEL: 718.531.9700
718.444.5768

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant;" (2) "a likelihood that the claimant's circumstance will recur;" (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region;" and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336 (citations omitted). Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted). Applying these factors, Plaintiff suggests that they weigh strongly in favor of settlement approval.

In light of the difficulties associated with establishing Plaintiff's regular and overtime hours, as well as Plaintiff's desire to avoid future legal proceedings, the settlement amount reached here is reasonable. *See Beckert v. Ronrubinov,* 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). In this case, the settlement will enable the parties to avoid the burdens and expenses of trial, as well as the litigation risks that always accompany same.

Courts consider settlements fair and reasonable when, as is the case here, they consider the potential risks of litigation. *See e.g., Martinez v. Hilton Hotels Corp.,* 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, *inter alia*, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.,* 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

370 LEXINGTON AVENUE, STE. 800
NEW YORK, NY 10017
TEL: 212.696.4LAW
FAX: 718.444.5768

www.HELDHINES.com

2004 RALPH AVENUE
BROOKLYN, NY 11234
TEL: 718.531.9700
718.444.5768

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). In this case, counsel for Plaintiff are experienced wage-and-hour litigators, and they exchanged multiple demands and offers of settlement with Defendants before settling on the terms of this proposed settlement. Counsel for Defendants are also experienced employment law and litigation attorneys. Moreover, prior to entering into the Settlement Agreement, Plaintiff thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

*Attorneys' Fees*

Pursuant to counsel's retainer agreement with Plaintiff, counsel will be reimbursed for out-of-pocket expenses of **$1012.50** (i.e., filing fee [$402.00], service of process [$310.50], and mediator's fees [$300.00]) and will retain 1/3 of the gross settlement (i.e., a total of **$14,166.67**) as attorneys' fees.

In total, Plaintiff's counsel expended approximately 60 hours in representing Plaintiff, including hours related to investigating the plaintiff's claims, counseling Plaintiff, reviewing and inputting timesheet and other data, preparing the pre-mediation letter and damages calculations, mediating the matter over several sessions, multiple phone calls with all parties concerned, post-mediation matters, drafting the letter motion, drafting the settlement agreement and drafting other closing documents, and drafting this letter motion.

I am Of Counsel to the Law Firm of Held and Hines LLP. I have practiced law since 2005, have been admitted in the State of New York since 1997, and My firm and I focus a substantial part of my practice on employment and wage-and-hour cases, having represented over 12,000 individuals in such claims. I am admitted to practice in all four federal Districts of New York as well as New Jersey. My regular hourly rate for matters in which I am retained is $400.00, which I believe is commensurate with other practitioners with a similar amount of experience in my locality who represent clients in matters such as this. There were other members of the firm that also assisted.

Although a lodestar calculation would be above the amount of fees awarded in this settlement, we have a standard retainer agreement with Plaintiff that allows us 33 1/3% of any possible recovery in this case. Based on our firm's experience in handling FLSA matters, the provision of 33 1/3% of a settlement is a standard arrangement in this District, and is routinely approved by courts in this Circuit, particularly for attorneys with relevant experience and expertise.

370 LEXINGTON AVENUE, STE. 800
NEW YORK, NY 10017
TEL: 212.696.4LAW
FAX: 718.444.5768

www.HELDHINES.com

2004 RALPH AVENUE
BROOKLYN, NY 11234
TEL: 718.531.9700
718.444.5768

*See, e.g., Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (*quoting Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, at *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

*Truthful Statements*

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Settlement Agreement does not contain a general release of Plaintiff's claims nor a confidentiality provision.

*Conclusion*

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Respectfully submitted,

HELD & HINES, LLP

*/s/ Jack Angelou*
Jack Angelou

cc: Nnenna Onua, via ECF

370 LEXINGTON AVENUE, STE. 800
NEW YORK, NY 10017
TEL: 212.696.4LAW
FAX: 718.444.5768

www.HELDHINES.com

2004 RALPH AVENUE
BROOKLYN, NY 11234
TEL: 718.531.9700
718.444.5768

**EXHIBIT 1**

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (Agreement) is made this by Rajin Mortley, Plaintiff, on the one hand, and S & N Topaze Restaurant, Inc., Seymour Letts and Nadine Letts TheDefendants, on the other. The Plaintiffs and Defendant are referred to collectively herein as the "Parties."

**WHEREAS**, on February 24, 2022, Plaintiff filed a civil lawsuit in the United States District Court, Eastern District of New York, captioned Rajin Mortley v. S&N Topaze et al, 1:22-cv-01003 LDH-CLP, alleging that Defendant violated the Fair Labor Standards Act (FLSA) by failing to pay Plaintiffs in accordance with the FLSA;

**WHEREAS**, Defendant has denied and continues to deny that it violated any federal, state or local laws, breached any duty, failed to pay any employees as required by the FLSA, engaged in any misclassification, misrepresentation, or other unlawful conduct with respect to any of its employees, including, but not limited to, the allegations that Plaintiffs raised, or could have raised, in the Litigation;

**WHEREAS**, Plaintiff has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiff, and, recognizing the significant risks of continued litigation, including the possibility that Plaintiff otherwise
may not recover anything or may recover an amount less than provided for in this Agreement, Plaintiff has concluded that the terms and conditions of this Agreement are reasonable and fair and the Agreement is in Plaintiffs' best interest;

**NOW THEREFORE**, in consideration of the monies, mutual promises, and mutual covenants contained herein, the Parties agree as
follows:

1. Payments and other consideration. In consideration for the promises by Plaintiffs in this Agreement, Defendant agrees to pay the total gross sum of FORTY TWO THOUSAND FIVE HUNDRED DOLLARS $42,500, which shall be paid as follows:

(a) One check made payable to Rajin Mortley in the gross amount of [written amount of payment] ($27,320.83, less lawful withholdings, for alleged wage damages, to be reported on an IRS 1099 Form

(b) One check payable to Held 7 Hines, LLP in the amount of FIFTEEN THOUSAND ONE HUNDRED SEVENTY NINE DOLLARS AND ESEVENTEEN CENTS $15179.17 for attorney's fees and costs. This payment shall cover all claims for attorney's fees and costs by Plaintiff in the Litigation. Defendant will issue an IRS Form 1099 to the name of Plaintiff's attorney's law firm for this payment.

Plaintiff agrees that the payments referenced in this Paragraph 1 constitute adequate consideration for the release of claims by Plaintiff in this Agreement, and that the payments are in full and complete satisfaction of any and all claims by him against Defendants and for any and

all attorney's fees and/or costs with respect to the Litigation. The payments referenced in this Paragraph 1. are expressly conditioned upon and subject to Plaintiff's compliance in good faith at all times with all terms of this Agreement.

2. Timing of payments and stipulation of dismissal. The payments referenced in Paragraph 1 of this Agreement shall be delivered to Plaintiff's counsel within 10 business days after the latest to occur of the following: (a) Plaintiff's counsel delivers to Defendants' counsel the executed, properly notarized original signature of Plaintiffs on this Agreement; (b) Defendants' counsel's receipt of current IRS Forms W-9 bearing Plaintiffs' original signatures; (c) Defendants' counsel's receipt of a current IRS Form W-9 bearing an signature for Plaintiffs' counsel; and (d) Defendant's counsel's receipt of a Stipulation of Dismissal With Prejudice, executed by Plaintiff's counsel or the Court's final dismissal of the Litigation with prejudice.

3. Taxes. Plaintiff acknowledges and agree that Defendants have made no representations with respect to the tax consequences of the payments set forth in Paragraph 1. of this Agreement. Except as otherwise set forth in this Agreement, Plaintiff expressly agree, as a condition of Defendant's performance of its obligations under this Agreement, that he will assume all responsibility for, and shall protect, indemnify, defend and hold harmless, Defendants from and against, any and all claims, losses, damages, expenses, including but not limited to attorney's fees, costs, disbursements, interest, penalties, litigation expenses and costs of collection, resulting from any liability or claim of liability for any amounts assessed by or due to any federal, state or local government or agency thereof in any jurisdiction.

4. No other payments or benefits. Except as set forth in Paragraph 1. of this Agreement, Plaintiff is not entitled to any other payments, compensation, wages, benefits, reimbursements or distributions from Defendants or any Releasees (as defined in this Agreement) under this Agreement, under any prior agreement, express or implied, written or unwritten, or otherwise. References in this Agreement to the release of claims by Plaintiff against Defendants and the other Releasees shall be deemed to also include, without limitation, the release of claims against Defendants and the Releasees regarding all contractual payments, compensation, commissions, wages, benefits, back pay, interest, statutory payments and penalties, bonuses, damages, vacation, sick leave, paid time off, medical, dental, optical or hospitalization benefits, accidental death and dismemberment coverage, long-term disability coverage, flexible spending plans, stock options, loyalty stock, pensions, 401(k) plan or other retirement benefits of any kind, education benefits, automobile usage benefits, life insurance benefits, overtime, sick pay, severance pay, travel expenses, out of pocket reimbursements, any other form of compensation, and attorney's fees and costs arising out of, related to, or derivative from Plaintiff's employment with Defendants.

5. Plaintiff's Release. In exchange for the promises and agreements contained herein and the payments described above, Plaintiff, on behalf of himself and his legal representatives, heirs, assigns and executors, hereby irrevocably and unconditionally forever release Defendants, any of its affiliates, predecessors, successors, assigns, parents, subsidiaries, its employee benefit plans, and each of their respective past, present and future employees, officers, directors, agents, insurers, attorneys, fiduciaries, advisors, direct and indirect members, partners, shareholders and representatives (collectively, the "Releasees") from any and all charges, complaints, claims,

grievances, liabilities, obligations, promises, agreements, controversies, damages, disability benefits, medical and hospital expenses, actions, causes of action, suits, rights, demands, costs, losses, debits and expenses of any nature whatsoever, whether known or unknown, suspected or unsuspected, vested or contingent, and whether concealed or hidden, which Plaintiff now has, ever had or ever will have against the Releasees by reason of any and all acts, omissions, events, transactions, circumstances or facts existing or occurring up to the date hereof, including, but not limited to, claims related to compensation, pay, payments, proceeds, cash flow, residuals, capital gains, commissions, hours, bonuses, pension, disability, stock options, 401(k) benefits of any kind, physical or mental affliction, benefits including vacation days and payment for unused vacation, paid sick leave, terms and conditions of employment, attorney fees or costs, and claims of retaliation, harassment or discrimination on account of age, race, color, sex, sexual orientation, marital status, disability, handicap, national origin, citizenship, veteran status and religion, including any and all claims arising under the following statutes and laws, including any amendments thereto: Title VII of the 1964 Civil Rights Act, Section 1981 of the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act of 1967, the Employee Retirement Income Security Act of 1974, the Immigration Reform and Control Act, the National Labor Relations Act, the Fair Labor Standards Act, the Occupational Safety and Health Act, the Lilly Ledbetter Fair Pay Act, the Sarbanes Oxley Act, the Family and Medical Leave Act, as well as any other similar state and local employment or wage payment laws. This release also specifically includes any claims that could have been brought under the laws of any country, as well as any United States federal, state, or local statute (whether or not specifically listed above), ordinance, regulation, code, rule, order or public policy, contract, implied contract, misrepresentation, promissory estoppel, unjust enrichment, or other tort or common law. Further, through this Agreement, Plaintiff specifically releases the Releasees from all claims arising out of or related to any employee handbooks, personnel manuals, or employment policies. The parties specifically agree that this release is intended to be as broad in scope as possible under all applicable laws, and that it specifically includes the release of all claims arising out of or related in any way to Plaintiff's employment with Defendants, including, without limitation, all claims by Plaintiff arising out of or related to the Litigation. This release does not include any claims that Plaintiff cannot release under controlling law, such as claims for unemployment benefits, and does not affect any action to enforce this Agreement.

6. Covenant not to sue. Plaintiff hereby represents that other than the Litigation, he has not filed any local, state or federal lawsuits against Defendant and will not file any local, state or federal lawsuits against Defendants for any claims existing as of the date on which they execute this Agreement. Except as set forth on page 1 of this Agreement, Plaintiff represents that he has not filed any formal or informal complaints, charges, and/or claims arising out of or related to Plaintiff's employment with Defendants, or the termination thereof. Plaintiff does not waive his right to file an administrative charge with the Equal Employment Opportunity Commission or any other employment and government agencies, but Plaintiff agrees that he will never accept or receive any compensation for any such administrative claim(s) beyond the compensation that they receive pursuant to this Agreement. The parties acknowledge and agree that the covenants in this paragraph are essential and material parts of this Agreement and that without their inclusion, this Agreement would not have been reached by the parties. This paragraph does not preclude any party from filing a future action against any other party for breach of this

Agreement. Plaintiff represents that, to the best of his knowledge and belief, he is not presently a putative or actual member of any class, collective or other action against any of the Releasees other than the instant Litigation. Further, in the event that Plaintiff receives notice in the future that they have been identified as a putative or actual member of any class, collective or other action against any of the Releasees, he agrees to promptly take all steps necessary to effectuate his dismissal with prejudice, and Plaintiff shall not accept compensation of any kind from Defendants in any such action.

7. Withdrawal of litigation. Plaintiff agrees to withdraw with prejudice, in its entirety, the Litigation and execute, either himself or through their counsel, any and all documents required to effectuate that withdrawal, including, without limitation, Stipulation of Dismissal with Prejudice.

8. No admissions of liability and non-admissibility. By entering into this Agreement, Defendants does not admit, and specifically denies, any liability or wrongdoing. Plaintiff expressly understand and agree that Defendants expressly denies that it violated the FLSA, and that Defendants are entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all matters in controversy, disputes and causes of action brought by Plaintiff against Defendants. Accordingly, this Agreement does not constitute an admission by Defendants or by any Releasee of any violation of any federal, state or local statute. Further, this Agreement does not constitute an admission by Defendants or by any Releasee of any violation of any contract or common law or any other legal duty. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendants or any Releasee.

9. Conditions precedent and other steps. This Agreement is contingent upon and requires court approval of all settlement terms. The parties agree to take all steps reasonably necessary to effectuate court approval of this Agreement, and to execute such documents and to take such other actions as may be reasonably necessary to further the purposes of this Agreement.

10. Confidential / proprietary information and non-disclosure.

(a) Plaintiff agrees that he will not use, disclose, or cause to be disclosed in any way, directly or indirectly, any of the Defendants' trade secrets, confidential, or proprietary information, or documents including, without limitation, information and documents relating to the Defendants' business and operations; customers, clients, and vendors; technology, finances, and innovations; business, sales, promotion, pricing, and marketing plans; processes, techniques, and strategies; and products, services, and employees, except as may be required by law or other compulsory disclosure process.

(b) Protected rights. Nothing contained in this Agreement limits the Plaintiff's ability to file a charge or complaint with the Equal Employment Opportunity Commission (EEOC), the National Labor Relations Board (NLRB), the Occupational Safety and Health Administration (OSHA), the Securities and Exchange Commission (SEC), the Department of Labor (DOL), or any other federal, state, or local governmental agency or commission (Government Agencies). Plaintiff further understands that this Agreement does not limit his ability to communicate with any

Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to the Company. This Agreement does not limit Plaintiff's' right to receive an award for information provided to any Government Agencies

(c) Defend Trade Secrets Act. Employee is advised that pursuant to the Defend Trade Secrets Act an individual will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Further, Employee understands that in the event that disclosure of Employer trade secrets was not done in good faith pursuant to the above, Employee will be subject to substantial damages, including punitive damages and attorney's fees.

11. Non-disparagement. Plaintiff agrees that he will not, directly or indirectly, make untrue or defamatory statements about Defendants or any past, present and future employees, owners, officers, directors, attorneys or agents, or their families, partners and representatives, to any other person or business entity. Nothing in this paragraph or in any other provision of this Agreement is intended to or shall be interpreted to limit any of the Plaintiff's duties to testify truthfully under oath in any proceedings in which such person may testify, or his right to communicate with any governmental agencies.

12. Consideration and revocation period. Plaintiffs has 21 days from the date they receive this Agreement to review and decide whether to sign it. If Plaintiff chooses, he may sign the Agreement before the 21-day period ends. Once Plaintiff signs this Agreement, Plaintiff will have seven days to revoke it. Plaintiff may do so by delivering written notice of revocation within the seven-day revocation period to Defendants' counsel. If Plaintiff revoke this Agreement, it will be null and void in all respects. Plaintiff is further advised to consult with his attorneys before signing this Agreement.

13. Remedies. In the event of any breach of this Agreement, the parties reserve all remedies they may have in law or equity, including, without limitation, injunctive relief in accordance with applicable law for any breach (or anticipated breach) of this Agreement.

14. Severability. Each provision of this Agreement is severable and, if any term or provision is held to be invalid, void or unenforceable by a court of competent jurisdiction or by an administrative agency for any reason whatsoever, such ruling shall not affect the validity of the remainder of this Agreement.

15. Notices. All notices required under this Agreement shall be delivered to each party's attorneys of record, who are listed in the Stipulation of Dismissal.

16. No interpretation of ambiguity against the drafter. This Agreement has been negotiated and prepared by both Parties and their counsel. If any of the Agreement's provisions require a court's interpretation, no ambiguity found in this agreement shall be construed against the drafter

17. Third party beneficiaries. Each of the Releasees is an intended third-party beneficiary of this Agreement.

18. Authority. By their signature below, the individuals signing the Agreement represent and warrant that they have actual authority to execute this Agreement, that they have read and understand the terms of this Agreement, that they all have consulted with counsel prior to signing Agreeement and that they are entering into this Agreement knowingly, voluntarily and without any coercion or duress.

19. Ownership of the released claims. In consideration for the payments to Plaintiff and hia counsela referenced in Paragraph 1. of this Agreement, and for Plaintiff executing this Agreement, and as an express condition of this Agreement, Plaintiff hereby represents and warrants that, up through and including the date on which this Agreement has been fully executed by the parties, he is the sole owner of the claims that they are releasing pursuant to this Agreement and that he has not assigned or transferred, and will not assign or transfer: (a) any claims against Defendants or any Releasees, or (b) any rights that they have or may have to the aforementioned payments.

20. Governing law. This Agreement shall be governed by, construed and enforced under the laws of The State of New York without regard to conflict of laws principles.

21. Headings. The headings used for the Paragraphs of this Agreement are solely for the convenience of the parties and shall not have any other independent meaning or significance.

22. Entire agreement. This Agreement sets forth the entire agreement between the parties regarding the subject matter hereof and supersedes any written or oral understanding, promise, or agreement directly or indirectly related to them. Plaintiffs acknowledge that they are legally competent to execute this Agreement and accept full responsibility for this Agreement. This Agreement shall be final and binding upon the parties, their predecessors, successors, and assigns, as to all past or present disputes referred to herein which may have existed or now exist between them. Any amendments or changes to this Agreement are unenforceable unless they are made in a writing signed by Plaintiffs and the Chief Executive Officer of Defendant.

BY SIGNING THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE, I ACKNOWLEDGE THAT I READ IT; UNDERSTAND EACH PROVISION IN IT AND KNOW THAT I AM GIVING UP IMPORTANT LEGAL RIGHTS; I AGREE WITH AND ACCEPT EVERYTHING IN IT; I AM AWARE OF MY RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING IT; AND I HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.

In witness hereof, this Settlement Agreement and General Release has been executed this Day of         November, 2023.

Read, Accepted, and Agreed: [Name of plaintiff.
Signature:_____

[Name of first plaintiff]'s Printed Name:_____
Dated: November ,    2023.
ON BEHALF OF [Name of Defendant]
Signature:_____ Printed name:_____
Title:_____ Dated: [November    ,2023